Filed Jan. 29, 1890.

———————

No. 13,209.

ROGERS ET AL. *v.* THE PHENIX INSURANCE COMPANY OF BROOKLYN.

INSURANCE.—*Action on Policy.*—*Condition as to Vacancy of Building.*—*Declarations of Agent.*—*Complaint.*—In an action to recover the insurance on a building burned while vacant, the policy containing a proviso that it should become void if the building should be allowed to become vacant, where the complaint alleges a rule of the insurance company made prior to the application permitting a vacancy of the property for thirty days at one time, declared by the agent to form a part of the contract of insurance annulling the proviso, it is not error for the court to sustain a motion to strike out this part of the complaint, the effect of the allegation being, as no mistake in the policy is averred, that the agent misrepresented the legal liability of the company on the policy.

SAME.—*Age of Building.*—*Statement of in Application.*—*Representation, not Warranty.*—In an application for insurance, after the questions and answers as to the property to be insured, was the following: "I warrant the foregoing application to contain a full and true description and state-

Rogers *et al. v.* The Phenix Insurance Company of Brooklyn.

ment of the condition, situation, nature, etc., of the property hereby proposed to be insured, and I warrant the answers to each of the foregoing questions to be true." In the policy it was expressly stated that the insurance was based upon the representations contained in the application, "each and every statement of which is hereby specifically made a warranty."

*Held,* construing the application and policy together, that a statement in the application as to the age of the building insured did not constitute a warranty.

SAME.—*Policy.—Ambiguous Language.—Construction.*—Where the language used in a policy of insurance is capable of two constructions, the one most favorable to the insured shall be given it.

SAME.—*Representation of Value of Land and Buildings.—Mere Opinion.*—A representation in an application for insurance as to the value of the land on which the building to be insured is situated, or of the building itself, is a mere expression of opinion.

SAME.—*Separate Amount on Each Building.—Misrepresentation as to One.— Effect.*—Where a policy of insurance stipulates a separate amount of insurance on each building, a false representation relating exclusively to one of the buildings does not defeat a recovery of the insurance on the other.

SAME.—*Vacancy in Violation of Condition.—Answer Alleging.—Sufficiency.*— In an action on a policy containing a condition that the policy should be void if the building should be allowed to become vacant, a paragraph of answer alleging that it was occupied when the policy issued, that it became vacant in violation of the condition, and was burned while vacant, denying any mistake in the policy, and setting out a copy of the application, states a good defence.

SAME.—*Application.—Filling by Agent.—Misstatement. — Effect.*—Where an applicant for insurance signs the application in blank, and the agent of the company, upon his own motion and without authority or direction from the applicant, fills the blanks, he does not thereby become the agent of the applicant, and the misstatements made by the agent in filling up the application will not avoid the policy.

From the Delaware Circuit Court.

*J. S. Scobey,* for appellants.

*J. McCabe* and *E. F. McCabe,* for appellee.

OLDS, J.—On the 27th day of December, 1884, the appellee executed to the appellants a certain policy of insurance, insuring certain property of the appellants against loss by fire. The total amount of the insurance was $1,000, and

was distributed on the property of appellant, as follows: "$700 on one-story, shingle-roof, frame building, occupied by a tenant as dwelling, No. 1 (including foundation, cellar or basement walls); $100 on shingle-roof frame barn, No. 1 (including foundation); $150 on shingle-roof frame granary; $50 on smoke-house."

The dwelling-house was destroyed by fire, and this action is to recover the $700 insurance thereon. Motions were made and sustained to strike out parts of the complaint. An answer in ten paragraphs was filed by appellee, and demurrers were addressed to the several paragraphs and overruled as to the second, seventh, eighth, ninth and tenth paragraphs, and exceptions taken; and appellants filed a reply to the second, seventh, eighth, ninth and tenth paragraphs of answer, to which reply there was a demurrer filed and sustained, and judgment was rendered on demurrer in favor of appellee.

The first error assigned is in sustaining the motion to strike out parts of the complaint. The policy contained a condition that, "if the buildings be or become vacant or unoccupied, or be used for any other purpose than as mentioned in said application, then the policy should become void." And the averments which were struck out of the complaint, were to the effect that before the plaintiffs made the application for the insurance, and before the insurance policy sued on was issued, the defendant made and promulgated a rule that a vacancy of property insured should not be permitted over thirty days at any one time, and that when the vacancy of the property insured became chronic the defendant did not want the risk; that at the time of making the application for the insurance in controversy in this case, the authorized agent of the defendant, and the agent through whom said insurance was effected and the policy issued, read the said rule to the plaintiffs, and declared and represented to the plaintiffs that the construction put upon said rule by the defendant was that said rule formed a part of said contract of insurance and superseded and annulled the condition

in the policy providing that said policy should become void on the property becoming vacant, and that the policy would be valid if the property did not remain vacant for more than thirty days at any one time; that plaintiffs paid the sum of $11$\frac{50}{100}$ for said insurance, and that said rule became and was a part of said contract of insurance; that the property became vacant on the 19th day of November, 1885, and was burned upon the 21st day of November, 1885, and that such vacancy occurred without the order, knowledge or consent of the plaintiffs, or either of them, by the tenant vacating the same.

There was no error in the court sustaining the motion to strike out this part of the complaint. It alleges no mistake in the policy of insurance. It admits that the policy was executed as it was intended to be, including the proviso that the policy should become void if the building should be allowed to become vacant, and the effect of the allegation is that the agent misrepresented the legal liability of the company on the policy. Suppose the company had made and promulgated a rule as alleged, viz. : " Remember our rule is not to permit vacancy over thirty days at any one time, and when this vacancy becomes chronic, we do not want the risk at all." This would not prevent the company from making a written contract of insurance on the terms stated in the policy.

The condition in the policy is that " if the above-mentioned buildings be or become vacant or unoccupied, or be used for any other purpose than is mentioned in said application without consent endorsed hereon, the policy shall be null and void."

The fair construction of the stipulation in the policy, and the rule, if the rule entered into the policy as contended, we think is that the company will permit a vacancy for the period of thirty days, provided its consent is endorsed on the policy ; but if the vacancy continues until it becomes chronic, the company do not want the risk at all, and the insured took

the policy with the stipulation contained in it that the policy should become void if the building were allowed to become vacant without the consent of the company endorsed thereon, but with an agreement on the part of the company, upon the application of the assured, to endorse his policy and allow a vacancy for thirty days, but if the vacancy continued from time to time until it became chronic, the company did not want the risk, and would not consent to the vacancy; and the rule would not abrogate the stipulation in the policy as contended by the counsel for appellants, even if the rule was in full force, and entered into and constituted a part of the policy, which we do not decide. Upon either theory the motion to strike out was properly sustained.

The next alleged errors complained of are overruling demurrers to each of the second, seventh, eighth, ninth and tenth paragraphs of answer. Counsel for appellants states that "they alike present, in substance, the same question," and discusses the ruling in overruling the demurrers to the eighth, ninth and tenth paragraphs, and we consider only the ruling presented and discussed.

The eighth paragraph of answer alleges that the policy sued on was issued at defendant's general office at Chicago, Illinois, by her general agent, on the sole information contained in plaintiffs' application taken by defendant's local agent at Greensburg, Indiana, and forwarded by him to said office, and whose powers were limited to taking and transmitting such application and the premiums and notes to said office, and said policy was transmitted directly to plaintiffs by mail; that in said application, a copy of which is filed marked "Exhibit A," and made a part hereof, said plaintiffs stated and warranted that said dwelling-house, embraced in said application and policy, was only fifteen years old, and said statements are made parts of said policy and conditions precedent to plaintiffs' right to recovery, and are warranties of the truth of the facts therein stated; that in truth and in fact said house then and there was more than fifteen years old,

Rogers *et al. v.* The Phenix Insurance Company of Brooklyn.

the same being then and there twenty years old; that there is thereby a breach of said warranty and conditions precedent.

We copy so much of the application as is material for the determination of the question as to the validity of this paragraph of answer:

"*Application for Insurance on Farm Property, Churches and School-Houses.*

"Application of E. H. and Mary Rogers, of Salem township, county of Delaware, State of Indiana, for insurance against loss or damage by fire or lightning, by the Phenix Insurance Company of Brooklyn, in the sum of $1,000, according to the specifications below, for the term of three years from the 27th day of December, 1884. It being understood that the value of the property is estimated by the applicant on one-story, shingle-roof, frame building, occucupied by tenant as dwelling No. 1 (including foundation, cellar or basement walls), valuation, $1,000; sum insured, $700. One shingle-roof frame barn, No. 1 (including foundation), valuation, $200; sum insured, $100. One shingle-roof frame granary, the value of which is $300; sum insured, $150. One smoke-house, 12x16x12, valuation $75; sum insured, $50. Amount of policy, ——; sum insured, $1,000. Situate on section 6–31, town, 19–20, range 9–9, county of Delaware, Indiana.

"DWELLING.

" 1. Is it frame, brick or stone? Frame.

" 2. What is its age? Fifteen years.

" 3. Condition? Good.

" 4. Present cash value? $1,200.

" 5. Is it finished? Yes. And painted? Yes.

" 6. What kind of roof? Shingle.

" 7. What are the dimensions? Main building, one story, 32 feet by 34 feet; height, 13 feet; wing 12 feet by 32 feet; height, 11 feet.

" 8. Chimneys, what kind? Brick.

Rogers *et al. v.* The Phenix Insurance Company of Brooklyn.

"9. Where do they start, above or below upper ceiling? Both ways.

"10. Do all pipes enter good brick flues? Yes.

"11. How do pipes enter flues, at side or bottom? Both ways.

"12. Do any pass through partition or floors or ceilings? If so, how are they secured, and how near to wood? No.

"13. How far off and in what are ashes kept? Safe.

"14. Is summer kitchen detached from dwelling? If so, how far? None.

"15. Does stove-pipe in summer kitchen pass through side or roof? No.

"16. If so, will you agree to keep it in good order? Yes.

"17. By whom is house occupied? Tenant.

"18. For what purpose is house occupied? Dwelling."

Numerous questions are answered as to the other property, and then follows this statement:

"I warrant the foregoing application to contain a full and true description and statement of the condition, situation, value, occupation and title of the property hereby proposed to be insured in the Phenix Insurance Company, and I warrant the answers to each of the foregoing questions to be true," which application is signed by Mary Rogers.

In the body of the policy of insurance issued, the following statement is contained:

"This insurance is based upon the representations contained in the assured's application of even number herewith on file in the company's office in Chicago, Illinois, each and every statement of which is hereby specifically made a warranty and a part hereof, and it is agreed that if any false statements are made in said application this policy shall be void," etc.

It is expressly stated in the policy that the insurance "is based upon the representations" contained in the application. The language used in the application and in the policy con-

strues the statement, in the application as representations, but also seeks to construe them as warranties. It is a well recognized rule of construction that when the language used in a policy is capable of two constructions, the one most favorable to the assured shall be given to it; but the appellee in this case seeks to place a narrow construction on the language used, and the construction most favorable to itself.

In the case of *Burkhard* v. *Travellers' Ins. Co.,* 102 Pa. St. 262, the court says: " The true principle of sound ethics, says Chancellor Kent, is to give the contract the sense in which the person making the promise believes the other party to have accepted it. A just sense should be exercised in so interpreting it as to give due and fair effect to its provisions. 2 Kent Com. 557. When a party uses an expression of his liability having two meanings, one broader and the other more narrow, and each equally probable, he can not, after an acceptance by the other contracting party, set up the narrow construction. 2 Whar. Con., section 670. Hence, when an insurance company tenders a policy to a party seeking to be insured, and uses in the policy ambiguous words, these words will be held to have the meaning most favorable to the insured, as the presumption is that on this construction he took the policy." To the same effect is the decision in the case of *National Bank* v. *Insurance Co.,* 95 U. S. 673.

In the case of *Moulor* v. *American L. Ins. Co.,* 111 U. S. 335, it is held that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty. This same rule of construction was adopted and held by this court in the case of *Northwestern Mut. L. Ins. Co.* v. *Hazelett,* 105 Ind. 212.

The complaint is based upon the policy of insurance, and a

copy of the policy is filed with and made a part of it, and the answer is based on the application, on the theory that the statement made as to the age of the building is a warranty, and alleging a breach of the warranty. The application and policy must be construed together, and so construing them the statements in the application do not constitute a warranty, but are representations, and must be treated as such in determining the liability of the company upon the policy. The construction given to the policy is a just one; if construed to be a warranty the statements must be literally true, else they avoid the policy. It would hardly seem consistent that fair dealing persons would intend that an immaterial variance in the age or value or size of a building, which was in no way detrimental, and which did not render the risk more hazardous, should vitiate the contract; but if false and material, then they would affect the rights of the parties. The age of a building is a matter which a person might be very liable to be mistaken about; and if the statement in the application be held to be a warranty, a slight variance in the age of the building, though it in no way affected the risk, would render the policy void; this representation made in the application for insurance, in this case, can not be held to constitute a warranty.

The court erred in overruling the demurrer to this paragraph of answer.

The ninth paragraph alleges a warranty that the land on which the dwelling-house was situate was thirty-seven acres, and was of the value of $50 per acre, whereas, in fact, it was not worth more than $25 per acre. This, held by this court to be a representation as to value, is nothing more than an expression of opinion as to the value of the land, and must have been so received, understood, and treated by the company; that all the warranty amounts to is that such is his opinion as to the value of the land, or property. *Pickel* v. *Phenix Ins. Co.*, 119 Ind. 291; *Phenix Ins.*

*Co.* v. *Pickel,* 119 Ind. 155. This paragraph of answer is bad, and the court erred in overruling the demurrer thereto.

The tenth paragraph of answer alleges a warranty as to the value of the barn insured by said policy; that it was of the value of $200, and that the granary insured by the policy was of the value of $300; that, in fact, the barn was not worth more than one hundred dollars, and the granary not worth more than one hundred dollars.

This paragraph of answer was bad upon two theories. It, is a mere expression of an opinion as to the value. The policy of insurance stipulates a separate amount of insurance on each building, and a representation or warranty relating exclusively to one of the buildings would not defeat a recovery of the insurance on the other, The suit is for the insurance upon the house which was alone destroyed by fire. *Pickel* v. *Phenix Ins. Co., supra; Phenix Ins. Co.* v. *Pickel, supra.*

The seventh paragraph alleges a warranty as to the value of the house insured. For the reasons heretofore stated this paragraph was also bad, and the demurrer should have been sustained to the same.

The second paragraph alleges that the house was occupied when the policy issued, and that it became vacant in violation of the condition stated in the policy, and was burned while vacant, and denied there being any mistake in the policy, and set out a copy of the application for said insurance. This paragraph states a good defence.

The next error assigned is the sustaining of the demurrer to the plaintiffs' reply to the second, seventh, eighth, ninth and tenth paragraphs of answer.

To avoid the condition in the policy that it should become null and void if the property should become vacant, it is alleged in the complaint that it was agreed between the plaintiffs and the agent of the defendant, that the words, " or if the above-mentioned buildings be or become vacant or unoccupied," should be stricken out of said

policy, and the words, " our rule is not to permit vacancy over thirty days at any one time " should be inserted in said policy, and that the terms of the policy agreed upon to be issued to the appellants by the defendant was not to become forfeited unless the property should become and remain vacant thirty days, and that by the mutual mistake of appellants and appellee the words to be stricken out were left in, and words to be inserted were left out; that the property became vacant without the knowledge or consent of either of the appellants on the 19th day of November, 1885, and two days thereafter the dwelling-house casually took fire and burned down; and there was a prayer for a reformation of the contract.

The plaintiffs' reply to said paragraphs of answer contained the following averments: " For reply to said second, seventh, eighth, ninth and tenth paragraphs of said answer, and each of them, plaintiffs say that at the time of the making of said application for said insurance sued on, said Edward H. Rogers, who then and there acted for his said wife, Mary J. Rogers, having in his possession an expired policy of insurance upon said property, said J. H. St. John then and there being the agent of the defendant, greatly desired said plaintiffs to make an application with the defendant for the insurance of said property through him, said St. John, as such agent; that thereupon said Rogers informed said St. John that he, said Rogers, had no knowledge or information, nor did said Mary J. have any knowledge or information, as to the value or description of said property, or of the real estate upon which the said buildings were situate, and that said plaintiffs, or either of them, could give no *data* of value, or make any representations as to the value, condition, description or otherwise, of said buildings, or of the real estate on which they were situate; nor would they, or either of them, make any statement as to the value, age, description, quantity or quality of any of said property; that said St. John being then and there desirous to effect such insurance,

said plaintiffs told him, said St. John, as such agent, that if from said expired policy, or from personally seeing said premises, and then and there acting for and on behalf of said defendant, he could or would make out an application for such insurance, he might do so, but that they, the plaintiffs, would make no representations whatever as to the value, size, age, condition, quantity or quality of any of said property; that said Rogers then and there delivered said expired policy to said St. John as such agent, and he, said Rogers, for and on behalf of his said wife, and at the request of said St. John, signed her name to said application, the same then being the printed blank application, and none of the blanks being then and there filled up; that the filling up of said blank application was the work of said St. John, as the agent of said defendant, and without any connection on the part of plaintiffs therewith other than said signing of said blank application, and said St. John, as agent of the defendant, forwarded said application so as aforesaid made by him as agent of defendant to said defendant's general agent at Chicago; that the making of said application was wholly the work of said defendant by its said agent, other than the signing of said blank form; that in connection therewith plaintiffs did not, nor did either of them, make any representation, statement, fact or figure therein set forth, but the same is wholly the work of defendant's said agent; that after said application had been sent by mail by St. John to the general agent of defendant at Chicago, the same was returned to said St. John, who then, still acting as defendant's agent, brought the same to said Mary J. Rogers and requested her in her own hand to sign the same, which she did at his request, not knowing of the contents or reading a word thereof, said St. John then and there saying to her that it was all right, and that as a matter of form the insurance company wanted her name signed thereto by herself, which she, at his request, did as aforesaid; that said St. John in no manner, way or form in

connection therewith acted as the agent of said plaintiffs, or either of them.

And they further aver that the making of said application, whether true or false as to the facts therein stated, is the act and deed of the defendant and its agent acting for it, the plaintiffs giving them no information as to said property insured, or as to its value, age, condition or situation, or of the quantity or value of the land; that at the time of, and concurrent with the signing of said blank application, said defendant then and there contracted and agreed as to said vacancy clause in the conditions of said policy to and with the plaintiffs for the vacancy clause therein, as the same is stated and pleaded in the complaint in this action, and for and upon the consideration therefor paid by the plaintiffs to said defendant. The agreement as to vacancy and the signing of the blank application being one and the same transaction."

In the case of *Pickel* v. *Phenix Ins. Co., supra,* this court says: "An agent, authorized to take applications for insurance, should be deemed to be acting within the scope of his authority where he fills up the blank application of insurance; and if, by his fault or negligence, it contains a misstatement not authorized by the instructions of the party who signed it, the wrong should be imputed to the company, and not to the assured. And when the agent thus authorized by his company to take applications for insurance, without the knowledge of the applicant, writes false answers to questions contained in the application contrary to the directions of the applicant, who makes true answers to such questions, the company will be estopped by the answers thus written by its agent."

In *Dunbar* v. *Phenix Ins. Co.,* 72 Wis. 492, it was held that where the agent of an insurance company filled out an application, and, without inquiring from the insured, inserted therein an answer stating that the property was unencumbered, he presented the application to the insured for sign-

ing, without acquainting him with its contents, and the latter signed it, not knowing that it contained such statement, the insured was not bound by the statement, and that the company could not avoid the policy on the ground of its falsity. *Continental Ins. Co.* v. *Pearce,* 7 Am. St. Rep. 557 (39 Kan. 396) ; *Western Assurance Co.* v. *Rector,* 85 Ky. 294. It is the well settled doctrine that the agent of an insurance company in filling blanks in the application does not thereby become the agent of the applicant. *Bartholomew* v. *Merchants' Ins. Co.,* 96 Am. Dec. 65; *Hingston* v. *Ætna Ins. Co.,* 42 Iowa, 46.

If an applicant for insurance signs the application in blank, and the agent of the company, upon his own motion and without authority or direction from the applicant, fills the blanks he does not thereby become the agent of the applicant, and the misstatements made by the agent in filling up the application will not avoid the policy.

In this case, as alleged in the reply, St. John, the agent of the company, is informed by one of the applicants that neither of the applicants could give him any *data* from which to fill up the application, and that they would not give him any *data* or information by which to fill it; that he, Edward H. Rogers, had an expired policy that the agent could take, and if he could fill up the application from it, or from his own information, on viewing the property, Rogers and wife would take the insurance. The agent produces a blank application and has Rogers sign it in blank, and St. John, the agent of the company, fills out the application and answers to all the questions from information which he receives or possesses, none of which is furnished him by either of the appellants. The agent, after he has the application filled, presents it to the wife of Edward H., who is the owner of the property, and states to her that it is all right; that it is a mere formal matter, and asks her to sign the application in person, without reading it to her, or offering to read it to her. If the application contains any false statements, or answers

to questions, it is the fault of appellee's agent; it was he who framed and wrote them, and procured the application to be signed containing them. The appellants and appellee were dealing together, the appellants in person, and the appellee by their trusted and authorized agent, St. John. The appellee, by its agent, prescribes the terms on which it will insure the property, and reduces it to writing, and procures the signature of Mary J., the owner of the property, and she pays the consideration, and the insurance is issued. If any wrong was done, if any false statement was made, it was done and stated by appellee's agent, and it can not take the benefit of a wrong committed by its own agent to defeat the payment of the loss. The reply is certainly good as to the seventh, eighth, ninth and tenth paragraphs of answer, which are bad, but would be good even if the representations were held to be warranties; but it does not confess the allegations in the second paragraph, and sufficiently state the mistake in the terms of the policy to avoid averment of vacancy in the second paragraph. It is not a good reply as to the second paragraph.

It is contended by counsel for appellee that the complaint is insufficient, and therefore none of the errors assigned by appellants are available for a reversal of the judgment.

The complaint was not tested by a demurrer, and we agree with counsel that the transcript is very informal; but, after some effort, we think we have been able to decipher it, and determine what the averments of the complaint are, although they are not very symmetrically arranged.

It is contended by counsel that the complaint does not show that the assured is the sole and unconditional owner in fee of said property. It avers that Edward H. had no interest in the policy; that he was named in it by reason of the fact that he was the husband of Mary J.; and it avers that the application was made by Mary J. Rogers alone, "who was then and there the sole owner of said property by deed in fee simple."

The complaint, we think, contains sufficient allegations to entitle the plaintiff, Mary J. Rogers, to recover, and we do not deem it necessary to state all of its averments in this opinion; but, as it appears in the record, the amendments are separate from the original complaint, and cause confusion in the record; if we are correct in this, it is a practice that ought not to be tolerated, and the complaint, as amended, ought to be redrafted into one pleading.

For the error of the court in overruling the demurrer to the seventh, eighth, ninth and tenth paragraphs of answer, the judgment must be reversed.

Judgment reversed, at costs of appellee, with instructions to the court below to sustain the demurrer to the seventh, eighth, ninth and tenth paragraphs of answer, and to order the complaint redrafted, and a reformation of the issues in accordance with this opinion.

Filed Jan. 16, 1890; petition for a rehearing overruled March 20, 1890.