Colleen WOOD, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Defendant–Appellee.

No. 93–1734.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1993.

Decided April 7, 1994.

Nick Katich (argued), Lucas, Holcomb & Medrea, Merrillville, IN, for plaintiff-appellant.

Robert G. Devetski (argued), Robert J. Konopa, Konopa & Murphy, South Bend, IN, for defendant-appellee.

Before CUDAHY and ROVNER, Circuit Judges, and WILL, District Judge.*

CUDAHY, Circuit Judge.

An arsonist set fire to Colleen Wood's house at Lake Station, Indiana on January 29, 1991. The house was destroyed in the fire. Allstate Insurance, Wood's insurer, thinks there was at least some chance that Wood herself is the arsonist. They are therefore investigating her claim, and have refused to pay until their investigation is complete. Unsatisfied, Wood brought this action against Allstate demanding payment.

■ Wood's homeowner's insurance policy, purchased from Allstate, became effective August 17, 1990. The policy insured Wood's house and property against "sudden and accidental physical loss," including loss caused by fire. R. 36, Exh. 1, p. 7. The policy expressly excluded from its coverage any loss caused by the "[i]ntentional or criminal acts of any insured person." But even had the insurance contract lacked such a provision, Indiana law (which governs this diversity action), would of course—as a matter of public policy—imply such a term rather than permit a homeowner who burned down her own house to collect insurance proceeds. *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 140 (Ind.App.1981).

Wood's house caught fire late at night on January 29, 1991, and the fire was extinguished by the early morning hours on January 30, 1991. Police and fire investigators found accelerant and suspected arson. Wood does not deny that the fire was deliberately set, only that she set it. Allstate has not denied Wood's claim, but is continuing its investigation. But because under the insurance policy Wood is required to sue Allstate, if she is to do so at all, "within one year after the date of loss," R. 36, Exh. 1, p. 22, Wood brought this action demanding payment.

The insurance policy contains two provisions that are at issue here. The first is the contractual limitations provision, declaring that if Wood wants to sue Allstate on the insurance contract, she must do so "within one year after the date of loss." This suit was filed on January 30, 1992. That was one year from the date that the fire was extinguished, but a year and a day from the date on which it began.

The second provision, a "cooperation clause," says that "no suit or action may be brought against us unless there has been full compliance with all of the policy terms." R. 36, Exh. 1, p. 22. The policy terms here in question require Wood to provide "all ac-

---

* The Honorable Hubert L. Will of the Northern District of Illinois, is sitting by designation.

counting records, bills, invoices, and other vouchers, or certified copies," that Allstate "may reasonably request." R. 36, Exh. 1, pp. 17–18. Wood must also "submit to examinations under oath and sign a transcript of the same" as often as Allstate may "reasonably require." R. 36, Exh. 1, p. 18.

Allstate moved for summary judgment, contending both that the suit was barred by the contractual limitations period and that Wood breached her contractual duty to cooperate with the investigation. The district court agreed on both counts, and entered summary judgment in favor of Allstate. 815 F.Supp. 1185. We disagree with the court's interpretation of the limitations provisions, and finding the existence of genuine issues of material fact precluding the entry of summary judgment on the cooperation clause, reverse.

I. Limitations period.

■ While Indiana's ten-year statute of limitations for breach of contract actions would otherwise apply, see IC 34–1–2–2(6); *Panos v. Perchez,* 546 N.E.2d 1253 (Ind.App. 1989), the parties to an insurance contract may agree to a shorter limitations period than that provided by the statute. *E.g. Meridian Mut. Ins. Co. v. Caveletto,* 553 N.E.2d 1269 (Ind.App.1990). The parties here agreed to a one-year contractual limitations period, and that agreement is valid and enforceable. *Id.*

■ The policy says that any suit against Allstate needs to be brought "within one year of the date of loss." The fire began on January 29, 1991, and was extinguished on January 30, 1991. The complaint was filed (and therefore the suit was brought) on January 30, 1992. The question is whether this was "within one year after the date of loss."

We note at the outset that this interpretive difficulty, like too many others, could have been eluded had counsel filed the relevant papers a day earlier. *See United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (Supreme Court, dividing 6–3, found that notice of intent to hold a claim filed on December 31 did not satisfy a statute requiring that such notice be filed "prior to December 31"). But that notwithstanding, the question here is whether this suit, filed January 30, 1992, was brought "within one year after the date of loss." Or more precisely, when a fire burns over more than one day, what is the date of loss?

■ Insurance policies are contractual agreements, and in divining their terms the starting point is of course the intent of the parties. *Evans v. National Life Acc. Ins. Co.,* 467 N.E.2d 1216, 1219 (Ind.App.1984). The district court, canvassing the three cases spanning over a century that have attempted to specify the "date of loss" when a fire's sparks ignite on one day and its last embers are extinguished on another, concluded that the date of loss was the day on which the fire broke out. *Johns v. New Hampshire Ins. Co.,* 66 Misc.2d 799, 322 N.Y.S.2d 324, 327 (N.Y.Sup.Ct.1971), a case from a New York intermediate appellate court, conflicts with the district court's conclusion, holding that it "seems fair to give [an insured] 12 months to sue from the time the fire has ended, rather than from a dubious point of beginning." But two older cases from Illinois support the district court, starting the clock on the contractual limitations period on the day the fire breaks out. *See Allemania Ins. Co. v. Little,* 20 Ill.App. 431 (1886); *Western Coal & Dock Co. v. Traders Ins. Co.,* 122 Ill.App. 138 (1905).

■ The court found that its conclusion was further supported by the Indiana Court of Appeals decision in *Brunner v. Economy Preferred Ins. Co.,* 597 N.E.2d 1317 (Ind. App.1992). That case held that under an insurance policy (not unlike the one at issue here) requiring the insured to bring suit within one year of the date of loss, suit needed to be brought within one year from "the date of the occurrence of the destructive event," rather than a year from the day on which the insured discovered the damage. According to the district court, *Brunner* teaches that Indiana law is not concerned with whether the insured "knew or should have known that damage had occurred." Order (Feb. 22, 1993) at 13. While a federal court sitting in diversity jurisdiction should attempt to determine how the dispute before it would be resolved by the state's highest

court, *Todd v. Bic,* 9 F.3d 1216, 1221–22 (7th Cir.1993); *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759, 761 (7th Cir.1986), we do not find *Brunner* to be a helpful guidepost in predicting how Indiana law would address this question.

*Brunner* holds that if the contract requires an insured to sue within a year of the date of loss, the clock begins on the date of loss, not when the insured first discovers the damage. That much is clear. But Wood is not claiming that the beginning of the limitations period should be tolled until she learned of the loss. Rather, she argues that the "date of loss" is January 30. *Brunner* tells us nothing about that question: whether the "date of loss" is the day the fire begins or ends. On this central question, Indiana law unfortunately provides no guidance.

We therefore turn to the first principles of contractual interpretation, principles firmly ensconced in Indiana law. Surely, if the contract said that in order to bring suit an insured must do so "within one year after the date the fire is ignited," this suit would be barred by the contractual limitations period. By contrast, if the language read "within a year after the date the fire is extinguished," it would be clear that this suit was brought within the limitations period. But rather than definite terms like "ignited" or "extinguished", the contract says "date of loss." At least in this context, that language is undoubtedly ambiguous.

■ Indiana has long accepted the canon of construction under which ambiguous insurance policies are interpreted in the light most favorable to the insured. *E.g. Tate v. Secura Ins.,* 587 N.E.2d 665 (Ind.1992); *State Security Life Ins. Co. v. Kinter,* 243 Ind. 331, 185 N.E.2d 527 (Ind.1962); *Rogers v. Phoenix Ins. Co.,* 121 Ind. 570, 23 N.E. 498 (Ind.1890). This is simply an application of the contract law principle that ambiguities in contracts of adhesion are construed against the drafting party. *Evans,* 467 N.E.2d at 1219. Thus, the Indiana Supreme Court said in *Rogers* (and repeated many times since) that when language in an insurance policy is capable of two constructions, it should be given the one most favorable to the insured. *Rogers,* 23 N.E. at 500. As we have noted, "date of loss" is surely capable of two constructions. It can plausibly mean either the date on which the fire begins or the date on which it is put out. That being the case, the provision should be read in Wood's favor, to mean the date on which the fire was extinguished. Thus, as we read the contractual limitations period in light of this canon of construction, the suit was brought "within a year after the date of loss," and the district court should not have granted summary judgment in favor of Allstate on this ground.[1]

## II. Failure to cooperate.

The policy says that in the event of a loss, the insured must provide Allstate with "all accounting records, bills, invoices, and other vouchers, or certified copies, which we may reasonably request," and, "as often as we may reasonably require," to "submit to examinations under oath and sign a transcript of the same." R. 36, Exh. 1, pp. 17–18. The policy further notes that "no suit or action may be brought against us unless there has been full compliance with all the policy terms." R. 36, Exh. 1, p. 22. Sufficiently cooperating with Allstate's investigation, then, is a condition precedent to the company's obligations under the contract.

■ Wood has undeniably been lackluster in cooperating with Allstate's investigation. Allstate argues that Wood has breached the policy's cooperation clause, and that it therefore is not liable under the contract. Cooperation clauses are particularly important in the liability insurance context. The insured injures the plaintiff, and the plaintiff sues the

---

1. Because the district court concluded that the day on which the fire began was the "date of loss," it went on to address the questions of waiver and estoppel. In a number of letters addressed to Wood, Allstate apparently referred to the fire as occurring on January 30, 1991. Wood therefore argued that Allstate has waived the benefits of the contractual limitations period, or relatedly that it should now be estopped from asserting the clause. The district court rejected these arguments, and they are advanced again on appeal. Yet in light of our conclusion that this action was brought within the contractual limitations period, it is unnecessary for us to resolve these questions.

insured. The insurance company will pay the judgment, and therefore has an interest in seeing that the insured puts on a good defense. In fact, the insurance agreements will typically provide that the insurance company will pay the cost of the defense. But even so, its ability to defend its interests will depend on the insured's cooperation in defending against the lawsuit. The concern is that the plaintiff and the insured might collude, to the detriment of the insurance company. *See* Note, *Conduct of the Insured Under Cooperation Clauses in Policies of Liability Insurance,* 22 Notre Dame L. 118 (1946).

But cooperation clauses are clearly enforceable in other insurance contexts as well, as such provisions "enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." *Claflin v. Commonwealth Ins. Co. of Boston, Mass.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 514–15, 28 L.Ed. 76 (1884). They therefore "universally have been held to be valid." 8 John Alan Appleman & Jean Appleman, *Insurance Law and Practice,* § 4771 (1981).

█ Unless the insurer waives the clause or is estopped from asserting it, a "breach of the cooperation clause by the insured will operate to relieve the insurer of liability under the policy." *Id.,* § 4772; *Motorists Mut. Ins. Co. v. Johnson,* 139 Ind.App. 622, 218 N.E.2d 712 (Ind.App.1966). But some courts, including Indiana courts, "have adopted the rule that the insured's violation of a cooperation clause constitutes a defense to the insurer only where it can show that it was substantially prejudiced by such violation." Appleman, *Insurance Law and Practice,* § 4773. "Non-cooperation must be material. Prejudice must be shown by the insurer." *Motorists Mutual,* 218 N.E.2d at 715.

In *Miller v. Dilts,* 463 N.E.2d 257 (Ind. 1984), the Indiana Supreme Court expressly approved the appellate court's decision in *Motorists Mutual,* announcing that "an insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id.* at 261. It then went on to address the related (but distinct) obligation of an insured (in the liability insurance context) to provide the insurer with notice of a claim against the insured for which the insurer will ultimately be liable. There, the court ruled that prejudice will be presumed from the failure to provide notice. It therefore found that "notice provisions in insurance policies are not equivalent to the cooperation clauses" in that the failure to cooperate, unlike the failure to provide notice, can "be technical and inconsequential, thereby resulting in no prejudice to the insurance company." *Id.* at 265. The state of Indiana law on the duty to cooperate is therefore clear. Where insurance policies contain cooperation clauses, those provisions are valid and enforceable. But an insurance company is able to invoke such a clause to avoid liability only where it is materially prejudiced by the insured's failure to cooperate.

The district court here granted summary judgment in favor of Allstate, as an alternative ground, because of Wood's failure to cooperate. A month after the fire, Wood submitted a proof of loss claiming more than $80,000 in damages. An attorney for Allstate requested that Wood submit to an examination under oath (EUO), and Wood did so. At the April 1, 1991 examination, Wood said that she did not remember a number of details of her personal and financial history, and said that a number of records that Allstate requested (including her 1990 tax returns) were destroyed in the fire. When a copy of the transcript was sent to Wood, she did not sign and return it as requested, nor did she respond to Allstate's request to continue the examination on April 23, 1991. Allstate's attorney then wrote to Wood advising her that her failure to continue the EUO could result in the denial of her claim, and requested that she continue the examination on May 6, 1991. On May 6, Wood called Allstate's attorney to cancel the EUO scheduled for that day, and asked to reschedule it for May 28, 1991.

Wood did submit to the examination on May 28. Allstate also asked Wood to provide authorizations that would allow Allstate access to Wood's tax returns and Florida vehicle registration records (Wood owned real estate in Florida where she said she planned to move as soon as she resolved family matters in Indiana). Wood never provided the requested authorizations, though she had earlier given Allstate a "general authorization." The district court, in granting summary judgment, relied on (1) Wood's alleged failure, when she submitted to the EUO, to remember relevant information and her claim that relevant documents were destroyed, (2) her failure to sign the EUO, and (3) her refusal to provide Allstate with authorizations that would allow the company to gain access to her tax records and Florida vehicle registration information. To affirm the district court's grant of summary judgment, we must find—with respect to at least one of these theories—that Wood's conduct amounts to a breach of the cooperation clause and that Allstate was prejudiced by it.

Summary judgment is appropriate, of course, only where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In weighing Allstate's motion for summary judgment, the evidence should be construed in the light most favorable to Wood, and all reasonable inferences should be drawn in her favor. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir.1993). We review the district court's entry of summary judgment de novo.

■ The district court relied first on Wood's failure to remember relevant information when she submitted to the EUO and her failure to bring certain documents to the examination, claiming that they were destroyed in the fire. To refuse to submit to an EUO is to breach a policy's cooperation clause, and an insured who does so is not entitled to recover proceeds under the policy. *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074, 1079 (Ind.App.1983). But in granting summary judgment here, the district court took this a step further. "There can be little difference between an insured who refuses to submit to an EUO, and an insured who submits to the EUO, but claims that she cannot remember relevant information and that relevant documents have been destroyed." Order at 18–19.

■ We agree that when an insured ostensibly submits to an EUO, but says she does not remember relevant information that in fact she does, or claims that relevant documents have been destroyed when in fact they were not, she has in effect refused to submit to the examination. But if the insured truly does not remember the information and the documents truly were destroyed, it cannot be said that the insured effectively refused to submit to the EUO. The question, therefore, is whether Wood's claims—that she cannot remember her income and that the documents were destroyed—are true. If they are not, she has breached the contract and Allstate owes her nothing. But it is fundamental that where "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." 10A Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726 (1983) (quoting Fed.R.Civ.P. 56(e) advisory committee's note).

The district court, in granting summary judgment, made an implicit determination that Wood was lying. Because at summary judgment inferences of this sort need to be drawn in favor of the nonmoving party, we think the court incorrectly granted summary judgment on this ground. We hasten to add, however, that an insured who claims to have lost all relevant documents and to have forgotten all relevant information is not summary judgment-proof. For one, summary judgment might still be appropriate if it is clear that the insured breached the cooperation clause in some other manner, and moreover, in our view, cooperation clauses should be construed to impose a heightened obligation on an insured to assist the insurance company in obtaining copies of documents that were lost or destroyed. But a court cannot, at the summary judgment stage, conclude that an insured who claims that documents were destroyed is lying, and dismiss her suit on that basis and that basis alone.

Second, the court found that Wood's failure to sign the EUO's was a breach of the cooperation clause. While she was surely delinquent in doing so, Wood did ultimately sign the EUO's on February 3, 1992, shortly after the complaint was filed. Moreover, the EUO's were given under oath and transcribed before a court reporter. The question is therefore whether Allstate suffered any prejudice by virtue of the absence of Wood's signature from the EUO's for the months between the dates when the EUO's were taken (April 1, 1991 and May 28, 1991), and the time Wood signed them (February 3, 1992). Because whether Allstate suffered prejudice appears to us to be a contested issue of material fact, we conclude that the entry of summary judgment on this ground was inappropriate.

The court finally concluded that Wood's failure to provide authorizations that would allow Allstate to obtain copies of Wood's tax returns and Florida vehicle registration records constituted a breach of the cooperation clause. The authorization for the motor vehicle records is puzzling, because Allstate does not explain either (1) what relevant information those records might contain (and surely the contractual language requiring Wood to provide information that Allstate "may reasonably request" limits Wood's obligation to providing relevant information), or (2) why it could not easily obtain that information from the Florida division of motor vehicles.[2] It is easier to understand why Allstate wanted the tax returns. Where the possibility is raised that an insured torched her own house in order to collect on the insurance policy, the financial condition of the insured is plausibly at issue. *See Stover v. Aetna Casualty and Surety Co.,* 658 F.Supp. 156, 160 (S.D.W.Va.1987) (footnotes omitted) ("Once the Defendant put in issue the possibility of arson, [the insured's financial status] became pertinent."); *but cf. Hines v. State Farm Fire & Cas. Co.,* 815

F.2d 648, 652 (11th Cir.1987) (finding there is no per se rule "requiring that an insured produce income tax returns where the insurer suspects fraud"). But it appears that Wood did sign a general authorization, and she argues here that this should have been sufficient. All of this appears to us to present a genuine issue of material fact. In reversing the district court's entry of summary judgment, we do not condone Wood's less than vigorous response to Allstate's inquiries. And we surely do not denigrate Indiana's important interest in combating arson and insurance fraud. A jury certainly could find, based on this record, that Wood breached her contractual duties and is not entitled to collect insurance proceeds. But we are unable to declare that no reasonable jury could reach a different result. Because we find that there is a genuine issue of material fact whether Wood breached the cooperation clause and whether Allstate was prejudiced thereby, the district court's entry of summary judgment is REVERSED, and the matter REMANDED for further proceedings consistent with this opinion.

---

2. While recent reform efforts have sought to limit the public availability of driving records, *see* Driver's Privacy Protection Act of 1993, H.R. 3365, 103d Cong., 1st Sess. (1993); Driver's Privacy Protection Act of 1993, S. 1589, 103d Cong., 1st Sess. (1993), the pending legislation would allow the disclosure of motor vehicle records for "use by any insurer ... in connection with claims investigation activities or antifraud activities." H.R. 3365 (proposed 18 U.S.C. § 2721(b)(9)). The Senate bill was incorporated into S. 1607, Violent Crime Control and Law Enforcement Act of 1993, which the Senate passed November 19, 1993.