**ALLSTATE INSURANCE COMPANY, Appellant–Supplemental Defendant Below,**

v.

**Michael D. KEPCHAR, Appellee– Plaintiff Below,**

v.

**Steve S. RUTHERFORD and Jerry Konecci, Appellees–Defendants Below.**

No. 04A03–9112–CV–392.

Court of Appeals of Indiana, Third District.

May 26, 1992.

**2.** The Court of Appeals opinion cited in the trial court's order was vacated by the Indiana Supreme Court.

John E. Hughes, Heidi B. Jark, Hoeppner, Wagner & Evans, Valparaiso, for appellant.

Nick Katich, Mark S. Lucas, Lucas, Holcomb & Medrea, Merrillville, for appellee.

STATON, Judge.

Allstate Insurance Company appeals a judgment in favor of Michael D. Kepchar, raising three issues for our review. As we reverse, we address only the following two:

    I.   Whether the trial court erred in denying Allstate's request for special findings of fact.

II. Whether Allstate must provide coverage under its umbrella policy if the insured has failed to satisfy conditions precedent to the policy.

We reverse.

On the evening of July 7, 1978, Michael Kepchar and Steven Rutherford were involved in a two motorcycle collision in which Kepchar was seriously injured. He filed suit against Rutherford and Rutherford's stepfather, Jerry Konecci, for negligence and negligent entrustment, respectively. The primary insurer, American Inter–Insurance Exchange ("A.I.E."), assumed the defense of Rutherford and Konecci during trial. Konecci was dismissed via judgment on the evidence, but a verdict was returned on March 23, 1984 against Rutherford in the amount of $370,000. Judgment was not entered on the verdict until April 23, 1984.

A.I.E.'s policy limits were $50,000, and counsel for Rutherford sought a settlement for the policy limits plus accrued interest after the judgment. Kepchar agreed to sign a release and satisfaction of judgment if Konecci and Rutherford would sign an affidavit stating that there was no other applicable insurance coverage. Accordingly, Konecci called Allstate to inquire about his umbrella policy but received the impression that he did not have sufficient underlying coverage to allow the umbrella coverage to become effective. A.I.E. tendered the money to Kepchar, and Rutherford signed the release, but Kepchar never received the affidavit and therefore never tendered the satisfaction of judgment.

Kepchar's counsel found out about the Allstate policy and filed a Motion for Proceedings Supplemental in an effort to collect the balance of the judgment from Allstate. After an evidentiary hearing, the trial court ordered Allstate to pay Kepchar the sum of $490,214.86 [1] and Allstate appealed.

## I.

### Denial of Request for Findings

While the second of the issues enumerated above requires reversal, we also address the first as it affects our standard of review. Allstate argues that the trial court erred in denying its request for findings of fact and conclusions thereon made pursuant to Indiana Trial Rule 52(A). We noted in *In re Marriage of Hudak* (1981), Ind. App., 428 N.E.2d 1333, 1335 that our courts have long held findings of fact to be improper in proceedings supplemental. We reaffirmed that holding in *U.S. Marketing Concepts v. Don Jacobs* (1989), Ind.App., 547 N.E.2d 892, 893, *rehearing denied,* as did our Fourth District in *First Bank v. Samocki Bros. Trucking Co.* (1987), Ind. App., 509 N.E.2d 187, 189 at n. 1, *transfer denied.*

■ Allstate argues that these cases are distinguishable in that no new issues of liability were raised. It also argues this case is distinguishable because Allstate could have filed a declaratory judgment. We fail to see how these facts mandate different treatment; proceedings supplemental are intended to be summary in nature and the rule against findings serves this purpose. *Samocki, supra,* at 189. The trial court did not err in denying Allstate's motion for special findings.

■ We note, however, that the trial court did make some "observations" about the facts of the case. Accordingly, we will treat the judgment as a general judgment supported by partial findings. *U.S. Marketing, supra,* at 893. On appeal from a general judgment we look at the evidence most favorable to the decision of the trial court and will affirm if the decision can be sustained on any legal ground. *Id.*

## II.

### Failure to Satisfy Conditions of Policy

■ An insurance policy is a contract, and therefore, the law of contracts applies when determining policy liabilities. *Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 505, *transfer denied.* Due to the great disparity in bargaining power between the parties, any ambiguous claus-

---

1. This figure represents $270,000 plus accrued interest.

es in the policy are construed in favor of the insured. *Id.* Conditions precedent to coverage are strictly construed against an insurer. *Motorists Mutual Ins. Co. v. Johnson* (1966), 139 Ind.App. 622, 218 N.E.2d 712, 718, *transfer denied*. Conversely, if the language in the policy is clear and unambiguous, it should be given its plain and ordinary meaning. *City of Muncie v. United Nat. Ins. Co.* (1991), Ind.App., 564 N.E.2d 979, 982. An ambiguity is not established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party. *Id.* The language of the policy must be reasonably construed by the court which may not find coverage unless the language of the policy admits liability. *Id.*

In support of its argument that it need not provide excess coverage here, Allstate points to the following "Conditions" set forth in the policy:

2. **Notice**

Upon the happening of an Occurrence reasonably likely to involve Allstate hereunder, written notice shall be given as soon as practicable to Allstate or any of its authorized agents. Such notice shall contain particulars sufficient to identify the Insured and fullest information obtainable at the time. The Insured shall give like notice of any claim made on account of such Occurrence. If legal proceedings are begun in such a case, the Insured shall forward to Allstate each paper therein or a copy thereof, received by the Insured or the Insured's representatives, together with copies of investigations with respect to such proceedings.

&ast; &ast; &ast; &ast; &ast; &ast;

5. **Attachment of Allstate's Liability and Claim for Loss**

Allstate's liability in any one Occurrence, within the coverage of this policy, shall not attach until Allstate's liability under this policy is ascertained. Claim for payment shall be made within twelve (12) months after Allstate's

liability has been ascertained either by payment by or by final judgment against the Insured resulting from actual trial, or by written agreement of the Insured, the claimant and Allstate. Subject to the above provisions, additional claims for payment arising out of the same Occurrence shall be payable within thirty (30) days after the Insured has furnished Allstate with due proof thereof.

Record, p. 954. Allstate contends that it did not receive notice of the accident or any claim or lawsuit arising out of the accident until over a year after trial. Thus, it is not liable.

■ Kepchar counters that Allstate had notice of the accident through its agent, Ray Popyk. The record reveals that Popyk lived in the neighborhood where Rutherford and Kepchar lived and where the accident occurred. At some time within six months of the accident Popyk learned that Rutherford was involved in a motorcycle accident through a comment or comments made in passing at a neighborhood social function. However, the record also reveals that Popyk never learned any particularities involving the accident, whether injuries were minor or serious, or who was at fault in the accident. Moreover, Popyk never received any written notice of the accident (as required by the policy) or any communication from the parties until over a year after trial. Neither did Popyk receive any pleadings or papers from the litigation which arose out of the accident until over a year after it was completed. Nothing which Popyk learned from his brief conversations with his neighbors would have indicated to him that coverage under Allstate's excess insurance policy was likely to be required as a result of the accident. We are loath to hold that general neighborhood gossip will satisfy the notice requirements of an excess insurance policy.[2]

■ Kepchar next argues that since notice was given to Allstate within 12 months of the time which the judgment became

---

2. We would also note that in its "observations" the trial court stated, "The court is not persuad-

ed [sic] that Allstate Insurance Company had notice through agent Popyk." Record, p. 864.

final, the insured complied with paragraph five of the conditions and therefore notice was timely.[3] He argues that paragraphs two and five are ambiguous, and thus a proper construction would be that if the insured has complied with paragraph five, notice is timely. He is mistaken. Allstate correctly observes that paragraph five refers to the filing of a claim with Allstate, not to notice of an "Occurrence," which is covered by paragraph two. Notice and the filing of a claim are two separate and distinct actions; in fact, they may be performed by two separate individuals, as where the insured gives notice of an "Occurrence" but the injured party files a claim after judgment in his favor. We need not address the issue of whether Kepchar has timely filed a claim with Allstate because we hold below that Rutherford's failure to comply with the notice provisions contained in paragraph two resulted in prejudice to Allstate as a matter of law.

Kepchar finally contends that even if the terms of the policy were not complied with, Allstate did not carry its burden of showing prejudice as a result of the failure to comply with the notice requirements. To that end, Allstate refers us to the following conditions of the policy:

### 7. Allstate's Right of Appeal

In the event the Insured or his insurer elects not to appeal a judgment which exceeds the Required Underlying Insurance limits or the Insured's Retained Limit, Allstate may appeal such judgment at its expense; such expense will be deemed to include the taxable costs, disbursements and interest charges, incurred in so doing, provided, however, that Allstate shall not be liable for an amount exceeding the limit of its liability stated in the Declarations, plus such taxable costs, disbursements and interest incidental to the appeal.

### 8. Assistance and Cooperation

Except as otherwise provided, Allstate shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the Insured; but Allstate shall have the right to associate with the Insured in the defense and control of any claim or proceeding reasonably likely to involve Allstate. In such event the Insured and Allstate shall cooperate in good faith.

Record, p. 954.

While Kepchar is correct that Allstate bears the burden of proving that it incurred some prejudice from the lack of notice provided it by the insured, we presume prejudice from an unreasonable delay in notification:

Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

*Miller v. Dilts* (1984), Ind., 463 N.E.2d 257, 265–266, *reh'g denied*. *Miller* involved three consolidated cases where the insured failed to give notice to the insurer. In the first of the consolidated cases, the insured did not give notice until six months after the accident and ten days after suit was filed. In the second, although the insurer

---

**3.** A verdict was returned on March 23, 1984, but judgment was not entered on the verdict until April 23, 1984. Kepchar argues that the judgment did not become final until June 22, 1984, when the time for filing a motion to correct error under the rules then in effect expired. Allstate received notice on May 3, 1985.

was given notice of the accident, it was not given notice of the subsequent lawsuit until after judgment. In the third, notice was not given the insurer until seven months after the accident and five days after suit was filed. Our supreme court remanded for entry of summary judgment in favor of the insurer on the basis of the notice provision in all three of the cases.

We followed *Miller* in *Milwaukee Guardian Ins., Inc. v. Reichhart* (1985), Ind.App., 479 N.E.2d 1340, *transfer denied*. In *Milwaukee Guardian*, the insured hired his own attorney who successfully defended in a negligence action. During trial, it was determined that coverage was available for the acts complained of under the insured's homeowners insurance policy. The insurer was notified orally of the action, but written notice as required by the policy was not provided to the insurer until after trial. The insured filed suit against the insurer seeking to recover his attorney's fees and expenses under the policy. On appeal, the insured argued that due to his attorney's skillful handling of the case and his success at trial, the insurer was not prejudiced by his delay in giving notice. We stated:

> Although Reichhart was successful at trial, Milwaukee was denied any opportunity to offer settlement or guide the course of litigation, a right conferred by the insurance contract. Milwaukee was prohibited from selecting its own attorney to defend the suit, one which might have been more familiar with insurance defense litigation. Milwaukee was unable to negotiate the amount of attorney's fees it would be required to pay. An insurance company cannot be forced to pay fees and expenses incurred wholly without its knowledge or consent pursuant to an insurance contract when the insured has made no effort to fulfill his duties under that contract. When trial has been concluded without notice to the insuring company, the company will not subsequently be required to disburse proceeds under that policy for expenses or fees incurred without its knowledge. *The trial court erred in finding that Milwaukee had not been prejudiced by*

> *Reichhart's delay. Prejudice was established as a matter of law.*

*Id.* at 1343 (emphasis added).

The parties engage in much quibbling about whether the case was vigorously litigated by trial counsel, whether discovery was properly conducted by the parties, and whether there were grounds for an appeal from the judgment. We need not address these issues—as in *Milwaukee Guardian,* the mere fact that the delay in notice precluded Allstate from exercising nearly every right reserved under the policy is itself enough to justify a finding of prejudice as a matter of law. Here, Allstate received no notice of either the accident or the lawsuit until more than a year after trial. It was not given the opportunity to associate with the defense and control of the case, attempt to negotiate a settlement in cooperation with the underlying insurer, or take an appeal. In fact, Allstate was effectively precluded from doing anything but tendering payment under the policy.

Kepchar argues that *Miller* and *Milwaukee Guardian* are distinguishable because they did not involve excess insurance policies. He argues that "Allstate reserved very few, if any, rights under its umbrella policy." Appellee's Brief at 34. We cannot agree. Conditions 7 and 8 quoted above unambiguously reserve the rights to associate in the defense and control of claims and proceedings and to take an appeal of a judgment exceeding the limits of the underlying insurance coverage.

In arguing that the nature of an excess insurance policy in itself precludes a finding of prejudice, Kepchar cites *Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.* (3rd Cir.1987), 815 F.2d 890. This case does not support the contention that an excess insurer can never establish prejudice. On the contrary, the court held that the insurer must show prejudice to exclude coverage based upon noncompliance with the notice provisions of the policy. However, the court refused to overturn the jury's finding of lack of prejudice where the excess insurer received notice ten months after suit was filed. Thus, *Lexing-*

*ton Ins.* is factually distinguishable from this case, where notice was not given until over a year after trial. Furthermore, this Court is not bound to follow the *Lexington Ins.* holding.

We hold the trial court erred in entering judgment for Kepchar, as prejudice was established as a matter of law. We reverse and remand for entry of judgment in the proceedings supplemental in favor of Allstate.

Reversed and remanded.

HOFFMAN and BARTEAU, JJ., concur.