Colleen WOOD

v.

ALLSTATE INSURANCE COMPANY.

Civ. No. H92–071.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 22, 1993.

Nick Katich, Merrillville, IN, for plaintiff.

Robert G. Devetski and Robert J. Konopa, South Bend, IN, for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment as to Punitive Damages, filed October 19, 1992, by Defendant, Allstate Insurance Company ("Allstate"). This Motion has been fully briefed by both parties, and on the basis of their arguments, the affidavits, exhibits, and depositions in this case, the Court hereby GRANTS Allstate's Motion.

BACKGROUND

On January 29, 1991, a house owned by the Plaintiff, Colleen Wood ("Wood"), located at 2210 East 35th Avenue, Lake Station, Indiana, was destroyed by fire. The house was insured by Allstate, under a policy with an effective date of August 17, 1990 ("the insurance policy"). The undisputed evidence in this case is that the fire was intentionally set. Both a police report filed by Officer Edward Cox and a fire report filed by Fire Chief Luster Hursey confirmed that the fire was deliberately set. There were burnt "lines" on the carpet in three rooms in the rear of the house, indicating that an accelerant had been poured on the floor. There was also a strong scent of kerosene (or a similar accelerant) in one of the rooms. Officer Cox also noted that "the house did not appear to be lived in ... there was very little furniture

and clothes in the residence." The Fire Chief estimated the damage to the house to be $25,000, and damage to the contents to be $2,000.

On February 28, 1991, Wood submitted a Sworn Statement and Proof of Loss to Allstate in which she stated that her house had been destroyed by fire on January 29, 1991. She claimed $53,000 for the loss of the house and $27,582 for loss of the contents of the house.

On March 4, 1991, Allstate retained Attorney John Hughes ("Hughes") to investigate Wood's claim. Hughes then sent a letter to Wood advising her that he had been retained by Allstate to investigate her claim, and that pending investigation of the fire, Allstate was neither accepting nor rejecting the tender of her Proof of Loss. In his letter to Wood, Hughes requested, pursuant to the terms of the insurance policy, that Wood submit to an examination under oath ("EUO").

On April 1, 1991, Wood, accompanied by Attorney Wardell Hampton, submitted to an EUO conducted by Hughes. During the EUO, Wood claimed that she could not remember various details of her personal and financial history, and claimed that pertinent records were destroyed in the fire. Wood stated that she was periodically employed as a construction worker, but was not employed at the time of the fire, that she could not remember her 1990 income, and that her 1990 W–2 forms were destroyed in the fire. Wood also stated that her tax returns would not accurately reflect her true income because she had earned income "under the table" that she had not reported on her tax returns. Wood also stated that she was six months behind on real estate taxes on both her Lake Station property and on a house in Gary, Indiana, that she owned jointly with her grandmother.

During her EUO, Wood also stated that she was the sole owner of real estate in Naples, Florida. She said that she acquired the money used to purchase the Naples property from the sale of a home in the Black Oak section of Gary, Indiana, which was purchased for around $3,000, fixed up almost entirely by Wood, and then sold for around $25,000. However, she stated that she could not remember the address of the Black Oak property or the name of the person who bought it. Additionally, Wood stated that the Naples property had become livable just a year before the date of the EUO, when she placed a mobile home on the property, and that she intended to move to Naples as soon as she resolved family matters in Indiana.

On April 14, 1991, Hughes sent a letter by certified mail to Attorney Hampton, which was claimed on April 15, 1991, in which Hughes enclosed the transcript of Wood's April 1, 1991, EUO. Hughes requested that Wood review, correct, sign, and return the transcript as quickly as possible. Hughes also requested that Wood continue her EUO on April 23, 1991, noting that it would be necessary to complete the examination before Allstate could make any determination regarding her claim, as the cause of the fire was determined to be arson. Although this letter was received on April 15, 1991, neither Attorney Hampton nor Wood replied to the letter, and neither appeared for the EUO on April 23, 1991. On April 24, 1991, Hughes sent a letter to Hampton by certified mail, and a copy of this letter to Wood by regular mail, advising them that Wood was required to answer questions under oath regarding her claim, and that failure to submit to the EUO could result in the denial of her claim. Additionally, Hughes requested that Wood continue her EUO on May 6, 1991, and asked that she bring her tax returns from the years 1985 to 1990, and other documents and information relevant to Allstate's investigation of her claim. On May 6, 1991, Wood contacted Hughes by telephone to cancel the EUO scheduled for that day, and asked that it be rescheduled for May 28, 1991.

On May 9, 1991, Hughes sent a letter to Attorney Hampton and to Wood confirming the rescheduling of the continuation of Wood's EUO to May 28, 1991, and again noting that the response of Allstate to the Proof of Loss could not be made until the investigation was completed, including the continuation of the EUO. Again, Hughes repeated his request that Wood bring specific documentation supporting her claim to the May 28 EUO. On May 28, Wood appeared without counsel for a continuation of her

EUO. Wood failed to provide the documentation and information requested by Hughes in both his April 24 and May 9, 1991, letters, again claiming that she could not remember the information and that her records had been destroyed in the fire.

On June 3, 1991, Hughes sent a letter to Attorney Hampton wherein he asked Hampton to clarify his role as Wood's representative, since he had not heard from Hampton since April. Hughes also requested that Hampton have Wood sign authorizations enclosed with the letter which would allow Allstate to view Wood's recent tax returns and Florida vehicle registration records as part of Allstate's investigation of Wood's claim.

On June 25, 1991, Hughes sent a letter to Hampton wherein he enclosed a copy of Wood's May 28 EUO and requested that Wood review, correct, and sign the transcript. Hughes reiterated that the authorizations for Wood's tax returns and Florida vehicle registration records had to be signed by Wood in order for the investigation of her claim to be completed. On August 26, 1991, Attorney James Stanton advised Hughes by letter that he was representing Wood and had received the correspondence in Attorney Hampton's file. On September 23, 1991, Hughes sent a letter to Stanton advising him that the investigation of Woods claim could not be completed until she returned signed transcripts of her EUO's and the signed authorizations for her tax returns and Florida vehicle registration records.

By letter of November 21, 1991, Attorney Nick Katich advised Hughes that he had been retained to represent Wood. He stated that "Allstate has acted in bad faith by not settling this matter in an efficient manner and not providing Ms. Wood with a copy of her own insurance policy for a period of over nine months." Katich stated that he believed Allstate's actions, such as failing to resolve Wood's claim, failing to provide her a copy of her policy, and requesting that Wood sign authorizations for her tax returns, were "obdurate and dilatory tactics". Katich demanded that Allstate produce a copy of the insurance policy and immediately pay Wood's claim in full. On December 3, 1991, Hughes sent a letter to Katich wherein he enclosed a copy of the insurance policy and stated that neither Wood nor her attorneys had ever asked him for a copy of the insurance policy prior to Katich's recent request. Hughes maintained that it would be necessary for Wood to provide authorizations for her tax returns and Florida vehicle registration records as part of the investigation of her claim.

On January 30, 1992, Wood initiated this lawsuit by filing her Complaint with the Clerk of the Lake County Superior Court, naming Allstate as defendant. On February 3, 1992, Katich sent a letter to Hughes wherein he enclosed the signature pages for Wood's EUO's. He stated that he did not believe any of the information requested by Allstate was relevant or material, and therefore he would not submit the authorizations for Wood's tax returns and Florida vehicle registration information. Allstate removed the action to this Court.

Allstate now contends that it is entitled to summary judgment as Wood's claim is barred by the 12–month contractual limitation provision contained in the insurance policy because Wood did not file this lawsuit within one year after the date of loss. Allstate also contends that Wood's failure to provide Allstate with authorizations for her tax returns and Florida vehicle registration records was a breach of a condition precedent to coverage and bars her recovery under the insurance policy. Wood argues that her lawsuit was filed within one year of the loss of her home, that Allstate waived the contractual limitations provision, and that she has not breached a condition precedent to coverage under the insurance policy.

DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332,

335 (7th Cir.1991); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988).

■ The burden is upon the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrates an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tanenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might effect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson*, 477 U.S. at 250–252, 106 S.Ct. at 2511–2512).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (1986).

## Contractual Limitations Period

The insurance policy between Allstate and Wood contains the following provision:

Suit Against Us

No suit or action may be brought against us unless there has been full compliance with all the policy terms. Any suit or action must be brought within one year after the date of loss.

■ Paragraph 14 of Wood's Complaint states that: "Allstate's failure to pay Wood's just claim constitutes a breach of its duty to negotiate and adjust Wood's claim in good faith and constitutes tortious breach of the terms of its insurance policy and its contract of insurance with Wood." Indiana law recognizes the existence of a duty on behalf of an insurer to deal in good faith with its insured, but that duty is an implied contractual duty, the breach of which is not recognized as an independent tort. *Troxell v. American States Ins. Co.*, 596 N.E.2d 921, 925 (Ind.Ct. App.1992). Therefore, Wood's contention that Allstate's failure to pay her insurance claim constitutes a breach of good faith, must be governed by the contractual limitation period. *Id.* Furthermore, it is clear under Indiana law that a one year contractual limitation period in an insurance contract is valid and enforceable. *Meridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269, 1270 (Ind.Ct. App.1990). Accordingly, there are two issues which must be resolved: (1) when the loss occurred and (2) whether Allstate waived the one year contractual limitation period.

The first area of dispute between the parties concerns is when the loss occurred. Here they raise two issues. First, Wood argues that Allstate cannot contend that the fire took place on January 29, 1991, as both Wood's Complaint and Allstate's Answer state that the fire occurred on January 30, 1991. Specifically, the Complaint alleges that "on or about January 30, 1991, said single family dwelling was completely destroyed by a fire. . . ." (Complaint, ¶ 4) Allstate answered that "it admits that on January 30, 1991, the single family dwelling described in the Allstate policy was destroyed by fire. . . ." (Answer, ¶ 4) Wood argues that this judicial admission contained in Allstate's Answer, as well as other representa-

tions made in correspondence that the house was destroyed by fire on January 30, 1991, should now bar Allstate from arguing that the house was actually destroyed by fire on January 29, 1991.

Initially, the Court notes that stipulations and admissions in the pleadings are generally binding on the parties and the Court. *Ferguson v. Neighborhood Housing Services,* 780 F.2d 549, 551 (6th Cir.1986). However, factual assertions in pleadings are only considered judicial admissions if the party making the assertion fails to amend it before trial. *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988). On January 4th, 1993, acting in the interest of justice, this Court entered an order allowing Allstate to amend its Answer to reflect the date of the fire at Wood's home as January 29, 1991. Consequently, this factual assertion is not a judicial admission binding on Allstate. Additionally, while this Court notes that certain correspondence did refer to the date of the fire as January 30, 1991, it is clear from the affidavits of the fire and police personnel, as well as from Wood's Proof of Loss, that the fire broke out on January 29, 1991. Wood's argument must fail.

This Court must next determine the "date of loss" for the purpose of determining whether the contractual limitations period contained in the insurance policy had lapsed when Wood filed her suit on January 30, 1992. Allstate contends that the date of loss is the date that the fire broke out, January 29, 1991. Accordingly, Allstate argues that the 12–month contractual limitations period had elapsed on January 30, 1992, when Wood filed suit. Wood argues that the date of loss is January 30, 1991, the date that the fire was extinguished. Consequently, her contention is that her Complaint was filed within 12 months of the date the fire was extinguished, and therefore, within 12 months of the date of loss.

Admittedly, the question is a novel one, which has not been discussed by many courts. The parties and this Court have only been able to locate three opinions which directly address this point. The most recent case in any jurisdiction is *Johns v. New Hampshire Ins. Co.,* 66 Misc.2d 799, 322 N.Y.S.2d 324 (1971).

In *Johns,* the Court dealt with a situation similar to the case at bar, where a fire started on one day but was extinguished on the next. The relevant statutory and contractual provisions required that suit be brought within one year after "the inception of the loss". The court explained the dilemma as such:

> The mere incantation of this catechism does not explain whether "after the fire" means after the spark has ignited, or after the conflagration has been extinguished, or after some other point in time. There is no New York case in which timely commencement of the action on the policy turned on whether the time began to run at the start of the fire or at the conclusion.

322 N.Y.S.2d at 326. The court went on to make the following analysis:

> In this case of novel impression, the arguments are persuasive that the time should be deemed to run from when the fire is put out. As apparently happened in the instant case, usually it is not known precisely when the conflagration started. It is known when the fire was extinguished and this is generally susceptible of substantiation from the fire department records. Certainly an assured can have no idea of even the gross extent of his loss until after the fire has run its course. It seems fair to give him 12 months to sue from the time the fire has ended, rather than from a dubious point of beginning.

*Id.*

Within the *Johns* opinion, two Illinois appellate decisions are cited for the opposite holding. These cases hold that the time within which suit must be brought under a contractual limitations period should be reckoned from the date the fire broke out, rather than from the date of its extinguishment. *Allemania Ins. Co. v. Little,* 20 Ill.App. 431 (1886); *Western Coal & Dock Co. v. Traders Ins. Co.,* 122 Ill.App. 138 (1905).

*Allemania Ins. Co.* dealt with a six-month contractual limitations period which stated that no suit or action against the company for recovery of any claim by virtue of the

policy would be sustainable in any court "unless such suit or action shall be commenced within six months next after the fire has occurred." 20 Ill.App. at 434. In reasoning that this language meant that suit must be commenced within six months of the beginning of the fire, the court stated:

The fire was the cause, the destruction of or damage to the property insured would be consequences. The fire may have occurred, within the meaning and intention of said clause, on the 23rd day of August aforesaid, and the destruction of the property may not have been fully consummated until the 24th day of the same month. It will not do to say that the fire had not occurred, unless the ruins had ceased to burn and smoke, and the destruction of the property becomes complete.

*Id.* at 435. In reaching opposite conclusions, the New York court in *Johns* and the Illinois court in *Allemania Insurance Company* rely on opposite policies. The *Johns* court concerns itself with the date on which the insured can discover the loss: "Certainly an assured can have no idea of even the gross extent of his loss until after the fire has run its course. It seems fair to give him 12 months to sue from the time the fire ended, rather than from a dubious point of beginning." 322 N.Y.S.2d at 326. The court in *Allemania Ins. Co.,* however, is not concerned about when the insured may be able to calculate the extent of her loss. Instead, the inquiry is an objective one, when did the fire break out?

In similar cases which do not deal with fire loss, the courts have employed the same reasoning, disregarding the date of discovery of loss, and instead fixing liability from a readily determinable point. In *Sager Glove Corp. v. Aetna Ins. Co.,* 317 F.2d 439 (7th Cir.1963), the court applied Illinois law to bar a claim under a contractual limitations period which stated "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless commenced within 12 months next after inception of the loss." 317 F.2d at 440. Recovery was sought for losses allegedly covered by vandalism and malicious mischief endorsements contained within fire insurance policies. The court held that there could be no recovery on these policies where suit was not brought within 12 months of the acts of vandalism or malicious mischief, as "inception of loss" means when the loss occurred and not when the insured discovered the loss. *Id.* at 441. *See also Wabash Power Equipment Co. v. International Ins. Co.,* 540 N.E.2d 960 (Ill.App.Ct.1989); *Wilson v. Indiana Ins. Co.,* 150 Ill.App.3d 669, 103 Ill.Dec. 922, 502 N.E.2d 69 (1986); *Thames Realty Corp. v. Massachusetts F & M. Ins. Co.,* 16 Misc.2d 747, 184 N.Y.S.2d 170 (1959).

Recently, in *Brunner v. Economy Preferred Ins. Co.,* 597 N.E.2d 1317 (Ind.Ct.App. 1992), the Indiana Appellate Court held that the insured's actual discovery of her loss is irrelevant for the computation of time within which the insured must bring suit under a policy with a specific limitation. 597 N.E.2d at 1319–20. The court stated that "the insured's state of mind plays no role in determining compliance with the policy's provisions. Thus, whether the insured knew or should have known that damage had occurred is irrelevant." *Id.* at 1319.

Clearly, on the authority of *Brunner,* Indiana would decline to follow the reasoning of the *Johns* court, that the date of the loss is the date on which the insured can discover the loss. Accordingly, this Court must conclude that Indiana law required Wood to bring her action within 12 months of the undisputed date that the fire broke out, January 29, 1991. As this suit was not filed until January 30, 1992, Wood's claim is barred by the contractual limitations provisions.

Wood contends that even if the Complaint was filed more than one year after the date of loss, Allstate either waived or is estopped from raising a contractual limitations defense. Under Indiana law, "a waiver or estoppel may result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy." *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 363 N.E.2d 985, 991 (1977) (quoting 46 C.J.S. Insurance § 1264 (1946)). "[T]he inquiry is whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the

limitation period will not be insisted upon."
*Id.*

The *Huff* court also discussed waiver of requirements of written notice and verified proofs of loss, noting that the standard for waiver is similar to that for limitation periods:

> It is to be observed, that it is the duty of the insurers, pending the consideration of the proofs of loss, to bear themselves with all good faith towards the claimant, and if they are dissatisfied with the proof furnished, and have, or have not, the right to demand further proof before their liability becomes fixed, they ought to make known to the assured the fact and nature of these demands without unnecessary delay.

*Id.,* 363 N.E.2d at 991–992 (citation omitted).

In *Huff,* the Indiana Supreme Court concluded that there was enough evidence to support the jury's finding a waiver where the fire occurred in February 1970 and Huff gave notice in late February or early March. The insurance agent told Mr. Huff to get repair estimates from which the agent would process the claim to the company. In May 1970, Huff returned with an estimate of the cost of repairs, but thought the estimate high, and told the agent he would seek more reasonable repair estimates. Not until May 1971 did the agent forward a loss report to the company, although Huff and the agent saw each other on numerous occasions during that time, but not on business. Although the policy contained a 12–month contractual limitations period, suit was not commenced until February 28, 1972, two years after the loss was sustained.

The Court found the evidence sufficient for the jury to find an implied waiver of both the provision limiting the time for suit and the provision requiring formal proofs of loss. "Once notice was given and no objection was raised to the mode of documentation and liability was not denied until long after the 12–month period, then the insurer has waived his right to insist on either provision. To hold otherwise would be to allow an insurer to lull an insured into not pressing his rights and then deny liability on the basis of the limitation period." *Id.* at 992.

■ Waiver is generally a question of fact. *Lumpkins v. Grange Mutual Cos.,* 553 N.E.2d 871, 873 (Ind.Ct.App.1990). However, where there are no disputed facts, and the undisputed facts establish a party is entitled to judgment as a matter of law, summary judgment is proper. *Id.*

■ Wood contends that Allstate waived the contractual limitations period because it "misled Wood by its reference to a January 30, 1991, fire in every piece of correspondence addressed to her or to her attorney's [sic] prior to the date of the filing of the Complaint which in any way referenced the date of the fire." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at 14) Here, Wood refers to three letters sent by Hughes to Wood or her attorney, on March 8, 1991, April 24, 1991, and May 9, 1991, in which the caption of the letter refers to "fire: 1–30–91 at 2210 East 35th Avenue."

This Court does not believe that these representations raise a genuine issue of fact as to whether Allstate waived the contractual limitations period. Allstate's reference to this date as the date of the fire neither signifies Allstate's belief that the fire did occur on January 30, 1991, nor is it sufficient action to "cause the insured to reasonably believe that the limitations period will not be insisted upon." *Huff,* 363 N.E.2d at 991.

■ Further, Wood implies that Allstate's failure to either acknowledge liability or deny coverage prior to the expiration of the one year period also raises a question as to whether Allstate waived the contractual limitations provision. This Court cannot agree. There is simply no evidence that Allstate ever expressly or impliedly related to Wood that it did not intend to rely on any of the policy provisions. From the beginning, Wood was told that Allstate believed the cause of the fire to be arson, and that it was necessary for her to cooperate in this investigation. Wood's failure to cooperate in Allstate's investigation precluded Allstate from denying Wood's Proof of Loss within the one year limitations period. Allstate made repeated requests that Wood submit to EUO's, that Wood sign these statements, and

that she produce certain documents, or authorize their release. Not until February 3, 1992, after the suit had already been filed, did Wood enclose the signature pages for her two EUO's. She has yet to authorize the release of her tax returns, although she now indicates that she is willing to do so. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at 19) In short, Wood simply cannot show that Allstate misled her into believing that it did not intend to rely on the insurance policy's limitation provision. Wood's failure to cooperate in the investigation caused Allstate's delay in denying her claim. She cannot now be heard to claim that this delay was prejudicial.

*Failure to Cooperate*

Alternatively, Allstate claims that Wood's failure to provide Allstate with authorization for her tax returns and Florida vehicle registration records, and to sign copies of the transcripts of her EUO's prior to filing her lawsuit, as required by the insurance policy, was a breach of a condition precedent to coverage and bars her recovery under the policy.

■■■■■ An insurance policy is a contract, and therefore, the law of contracts applies when determining policy liabilities. *Allstate Insurance Company v. Kepchar*, 592 N.E.2d 694, 696 (Ind.Ct.App.1992). Due to the great disparity in bargaining power between the parties, any ambiguous clauses in the policy are construed in favor of the insured. *Id.* However, if the language in the policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* The policy at issue in this case contains the following provision:

3. What you must do after a loss.

In the event of a loss to any property that may be covered by this policy, you must:

\*      \*      \*      \*      \*      \*

d) give us all accounting records, bills, invoices, and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.

\*      \*      \*      \*      \*      \*

f) as often as we reasonably require:

\*      \*      \*      \*      \*      \*

2) submit to examinations under oath and sign a transcript of the same.

Additionally, the policy also states that "no suit or action may be brought against us unless there has been full compliance with all the policy terms." Allstate contends that this language is unambiguous, and therefore, because Wood has failed to materially comply with the policy provisions above, she has breached a material condition precedent to the filing of suit.

The Court agrees that the provisions are clear and unambiguous. Under the contract, the insured must fully comply with the terms of the policy before suit may be maintained against the insurer. However, Wood argues in response that her refusal to timely submit the signature pages of her EUO's and to authorize the release of her tax returns and Florida vehicle registration records should be excused even in light of the policy provisions, because Allstate's request was unreasonable, and no prejudice resulted from her refusal to cooperate.

■■■■■ Initially, the Court notes that in Indiana an insured's refusal to submit to an EUO as required by an insurance policy is a material breach of the policy and relieves the insurer of its liability under the policy. *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074, 1077 (Ind.Ct.App.1983). The purpose of an EUO is "to enable the [insurance] company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." *Prince v. Farmers Ins. Co., Inc.*, 790 F.Supp. 263, 266 (W.D.Okla.1992) (quoting *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 95, 3 S.Ct. 507, 515, 28 L.Ed. 76 (1884)). There can be little difference between an insured who refuses to submit to an EUO, and an insured who submits to the EUO, but claims that she cannot remember relevant information and that relevant documents have been destroyed, and then refuses to review and sign the EUO or to provide the insurer with

authorization that would allow duplicates of the destroyed documents to be obtained. By requiring Wood to submit to EUO's, and to sign them, and to produce all accounting records, bills, invoices and other vouchers, as well as her tax returns, Allstate contracted for the right to get the best and most accurate answers in the investigation of Wood's claim. In light of the undisputed evidence of alleged arson, the large difference between Wood's claimed damages in her Proof of Loss and Fire Chief Hursey's estimation of the loss, and Wood's failure to answer questions at her EUO concerning her income and sources of income over the previous few years, this Court does not find unreasonable Allstate's requests that Wood submit to further EUO's, that she sign her EUO's, and that she authorize the release of her tax information as well as Florida vehicle information. The initiation of Allstate's investigation of Wood's claims was reasonable in light of the evidence that the fire at her Lake Station property was caused by arson, and the continuation of this investigation was reasonable in light of her answers to questions concerning her financial status at the time of the fire. *See Stover v. Aetna Casualty & Surety Co.,* 658 F.Supp. 156, 160 (S.D.W.Va. 1987).

The facts of *Stover* are much like the instant case. While Mr. Stover did cooperate with his insurance company to a certain extent,

> on one area of particular concern to the Defendant, his propensity to commit arson due to financial distress, there was a failure of cooperation. The Plaintiff either made no response, or gave vague, general answers when asked about his financial status. Through his attorney, he refused to turn over his income tax returns or bank statements from previous years. Once the Defendant put in issue the possibility of arson, this information became pertinent. The Plaintiff had the contractual duty—a duty supported by public policy—to cooperate with his insurer.

658 F.Supp. at 160 (footnotes omitted). As the requests made by Allstate were reasonable, Wood's refusal is not excused on this basis.

Wood's next argument is that Allstate has not shown that it was prejudiced by her refusal to submit the requested information. In *Miller v. Dilts,* 463 N.E.2d 257 (Ind.1984), the Indiana Supreme Court held that where prejudice is created by the insured's noncompliance with the policy's provisions, an insurance company is relieved of its liability under the policy. 463 N.E.2d at 261. However, the court went on to state that "an insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id.*

This Court does not agree with Wood that Allstate has suffered no demonstrable prejudice by Wood's refusal to submit the requested information. Allstate contracted for the right to receive from Wood all relevant information relating to her claim. Wood's failure to supply this information compromised Allstate's ability to evaluate its obligations, and protect itself against false claims. *See Claflin v. Commonwealth Ins. Co.,* 110 U.S. at 95, 3 S.Ct. at 515. Wood's failure to cooperate with the investigation of her claim prejudiced Allstate's ability to investigate the claim, and to determine its validity.

## CONCLUSION

Based on the foregoing, the Court concludes that the contractual limitations period requiring Wood to file suit on her claim within 12 months of the date of the loss bars Wood's suit filed January 30, 1992. Also, the Court concludes that Allstate has not waived its right to rely on the contractual limitations period. Further, the Court concludes that Wood materially breached a condition precedent to recovery under the insurance policy when she failed to fully cooperate with Allstate. Accordingly, the Court now GRANTS Allstate's Motion for Summary Judgment and ORDERS summary judgment entered in favor of Allstate.