**INDIANA GAS COMPANY, INC., et al., Plaintiffs,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

**Civil No. 1:95cv101.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Indiana Gas Co., Richmond Gas Corporation, Terre Haute Gas Corporation.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty & Surety Company, Detroit, MI, for Aetna Casualty & Surety Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for Home Ins. Co.

James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York, NY, Kandice L. Kilkelly, Rocap Witchger and

Threlkeld, Indianapolis, IN, for Certain Underwriters at Lloyd's, London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Robert J. Keane, Mendes and Mount, New York, NY, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York, NY, for Certain London Market Ins. Companies.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell LTD, Chicago, IL, for Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines.

*ORDER*

WILLIAM C. LEE, District Judge.

This matter is before the court on "London Market Insurers Motion for Summary Judgment on all Policies for Failure to Comply With the Notice Provisions of the Policies" [1], which was filed on July 10, 1996. The parties completed briefing the motion on August 9, 1996.

*Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which

1. Other defendants have joined London Market Insurers' motion for summary judgment.

the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

*Discussion*

The plaintiffs, Indiana Gas Company, Inc., Richmond Gas Corporation and Terre Haute Gas Corporation (collectively "Indiana Gas"), commenced this action by filing a complaint for declaratory judgment and breach of contract because of the refusal of the five remaining defendant insurance companies to pay claims for third-party property damage tendered to them by Indiana Gas under comprehensive general liability insurance policies. According to Indiana Gas, the underlying property damage arises out of the historical gas manufacturing operations that took place at certain properties now owned by Indiana Gas.

From the early 1800's until natural gas became widely available in the 1940's and 1950's, gas for heating, lighting and cooking was manufactured by superheating coal and, later, coal combined with oil. During the manufactured gas era, more than 1,500 cities and towns across the country had a town gas plant that manufactured and stored gas until it was distributed directly to the homes and businesses of the town through a pressurized underground gas pipeline distribution system. The gas manufacturing process created tar, as well as other residuals and wastes, as a by-product. Unfortunately, the residuals, wastes and by-products from the gas manufacturing process contained hazardous constituents, such as benzene, which have been discovered in the subsurface soil and groundwater at properties where these manufactured gas plants ("MGPs") were operated. Nine such former MGP sites: Shelbyville, Lafayette, Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute, Indiana, are at issue in the claims for property damage which underlie this lawsuit for insurance coverage.

Indiana Gas claims that it has incurred and will continue to incur millions of dollars in liabilities as the result of state and federal law requirements to respond to the property damage at and near certain former MGP sites. According to Indiana Gas, damage to

groundwater beneath the former MGP sites from subsurface leaching and migration began at most locations prior to 1955 and continues to the present day.

The policies at issue in the present motion contain a requirement that the insured give notice of claims. While the policies contain various wording with respect to this notice requirement, all of the notice provisions essentially provide that when an insured has knowledge of an occurrence likely to give rise to a claim under the policy, the insured shall give immediate written notice to the insurer (or representative)[2].

The insured bears the burden of establishing compliance with the notice provision in an insurance policy. *Miller v. Dilts,* 463 N.E.2d 257, 263 (Ind.1984). The insurer, however, bears the burden of proving that it incurred some prejudice from the lack of notice; but prejudice is presumed from an unreasonable delay in notification. *Allstate Ins. Co. v. Kepchar,* 592 N.E.2d 694, 698 (Ind.App.1992) (citing *Miller* at 265–68). Thus, to deny coverage for lack of notice the insurer must show either actual prejudice or that the delay in giving notice was unreasonable such that the court should presume prejudice.

### A. Shelbyville

With respect to the Shelbyville site, the defendants claim that Indiana Gas became concerned of possible liability at former MGPs in 1981 and its catalogue of former MGP sites was completed in 1984. The defendants further claim that Indiana Gas knew that phenols were associated with MGP production no later than 1984 when Mr. Thaler, the Chief Engineer of Indiana Gas, attended an AGA seminar on MGP plants. Finally, the defendants claim that in 1985, Indiana Gas' corporate 30(b)(6) witness conceded that the utility industry was on notice of the environmental liabilities associated with MGP plants in 1985, when the Radian Report[3] was issued. Thus, the defendants contend that, no later than 1985, Indiana Gas should have given notice to the insurers with respect to all MGP sites of which it was aware. The defendants claim that even though Indiana Gas had advised its insurer, AEGIS, only weeks after receiving notice of the Indiana Cities Water Corporation ("ICWC") suit in June of 1988, it waited five months to notify the defendants.

Indiana Gas, however, argues that it was not aware of any third party property damage or claim at Shelbyville until receipt of the notice of intent to sue from the ICWC in June 1988. With respect to the phenol contamination in 1986, Indiana Gas points out that the defendants do not have any evidence as to the cause of the phenol contamination but only assume that the contamination was from the MGP site. Indiana Gas argues that since they were not named as a defendant in the ICWC action until October 1988, this indicates that there was no evidence of a connection between Indiana Gas' former MGP operations and contamination at the Shelbyville site until that time.

Indiana Gas acknowledges that it did not send notice to the defendants until five months after it received the ICWC complaint. However, Indiana Gas argues that such a delay does not constitute an unreasonable delay as a matter of law. Indiana Gas points out that the cases cited by the defendants for the proposition that a five month delay is unreasonable are distinguishable as they involved automobile accidents, and prejudice is virtually automatic for any delay in providing notice of automobile accidents. *See Miller,* 463 N.E.2d at 265.

Indiana Gas argues that the Shelbyville claim is not like an automobile accident claim, as the Shelbyville claim involves operations that took place decades ago and the "accident scene" is already in a different condition than it was at the time of the accident. Indiana Gas further points out that preservation of short-term memories of witnesses is also not as significant as it was

2. *See* London Market Insurers' Brief at pp. 7–9; Home Ins. co.'s Joinder at pp. 2–3; Ranger Ins. Co.'s Joinder at p. 3; Aetna's Joinder at 3.

3. The Radian Report is a report prepared for the EPA by Robert Eng of Radian Corporation, McLean, Virginia, entitled *Survey of Town Gas and By-Product Locations of the United States 1850–1950,* dated February 1985.

in cases such as *Miller*, as the long-term memories of individuals familiar with historical MGP operations at Shelbyville are not likely to be materially affected by an additional five or six month delay. Thus, Indiana Gas concludes that any potential delay between the receipt of the ICWC complaint and notice to the defendants was not unreasonable.

**B. Lafayette**

With respect to the Lafayette site, the defendants argue that Indiana Gas waited seven years after the Radian Report was received to advise the defendants of the site. Also, Indiana Gas allegedly did not provide notice for a year after the City of Lafayette advised Indiana Gas of its potential liability, even though AEGIS had been advised of the matter six months previously.

Indiana Gas acknowledges that it was notified of the presence of contamination at the Lafayette site in March 1991, but claims that it did not confirm the presence of third party property damage relating to its former MGP operation until the results of its own invasive testing were completed in early 1992. Indiana Gas claims that it advised its insurers in February 1992 immediately after receiving the results of its invasive testing. Indiana Gas asserts that this was clearly timely notice.

Indiana Gas points out that this notice was five months before the IDEM issued its proposed order requiring Indiana Gas to take action at the Lafayette site.

**C. Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute Sites**

With respect to these sites, the defendants assert that notice was required no later than 1985 because: (1) Indiana Gas became concerned of "possible liability" at its former MGPs in 1981; (2) Indiana Gas' catalogue of former MGP sites was completed in 1984; (3) Indiana Gas knew that phenols were associated with MGP operations no later than 1984; and (4) the Radian Report received by Indiana Gas in 1985 constituted notice to Indiana Gas of potential environmental liability associated with its MGPs.

Indiana Gas, in response, argues that under the plain meaning of the defendants' policies, none of the above facts are sufficient to trigger the notice obligation. Indiana Gas claims that under the notice provisions in the Aetna-type policies, Indiana Gas must at least be aware of an occurrence. In the case of the London Market-type policies, Indiana Gas claims that in addition to being aware of an occurrence, it must also be aware that a claim is likely to be made arising out of that occurrence and that the amount of the claim is likely to implicate the policies.

Indiana Gas claims that with respect to the sites listed above, it had no knowledge of a possible occurrence until it conducted invasive testing at these sites and determined the presence of third party property damage in approximately 1994. Indiana Gas points out that even at that time it had not been presented with a claim, and thus, had no information to determine the amount of a potential claim and whether the defendants' policies would likely be involved by such a claim. According to Indiana Gas, it had no estimates of potential cleanup costs until completion of the invasive testing at each site in approximately 1994.

Moreover, Indiana Gas asserts that neither the general awareness of phenols associated with MGPs nor review of the Radian Report triggered the notice requirement. Indiana Gas claims that even though it may have been aware that phenols were associated with MGPs in 1984, it had no information suggesting any phenol contamination at any of the sites until conducting invasive testing at the sites. With respect to the Radian Report, Indiana Gas argues that even assuming that the Radian Report was notice of potential liability, notice of "potential" liability is insufficient to trigger the notice requirements. Additionally, the authors of the Radian Report expressly warned readers that the report was not designed to provide information on contamination or liability at any individual site, thus Indiana Gas contends that the Radian Report has no relevance to the issue of notice.

It is abundantly clear to this court that the issue of whether Indiana Gas failed to provide timely notice is an issue of fact for a

jury to decide. As the defendants themselves have noted, Indiana Gas' conduct is to be evaluated objectively by what a reasonably prudent person would do under the specific factual situation. *Miller v. Dilts,* 463 N.E.2d 257, 262–63 (Ind.1984). Such an objective evaluation of facts is precisely within the province of the jury. Consequently, London Market Insurers' motion for summary judgment will be denied.

*Conclusion*

For all of the foregoing reasons, LMI's motion for summary judgment (as joined by the other defendants) on the issue of the "notice provisions" is hereby DENIED.